**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Marcel Alleyne and Earl Legrande,<br>Individually and on behalf of all others similarly situated,<br><br><div align="center">Plaintiffs,</div><br>-v-<br><br>Time Moving & Storage Inc., and<br>The Time Record Storage Company, LLC,<br><br><div align="center">Defendants.</div> | Civ. Action #: 08-CV-1356<br>(ENV)(SMG)<br><br><br>**DECLARATION IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS CERTIFICATION AND SETTLEMENT** |

I, Abdul Karim Hassan, declare and affirm under the penalty of perjury:

1.  I am the attorney for Plaintiffs and Class Counsel in the above-entitled action, am a member of the Bar of the State of New York and duly admitted to practice before this Court.

2.  I make this declaration in support, on the basis of my familiarity with the facts and circumstances of the case, the records and pleadings, my investigation into the matter and upon information and belief.

3.  Plaintiffs' motion is based on the notice of motion, this declaration in support of Plaintiffs' counsel Abdul Hassan and the papers attached hereto, and the entire record, files and pleadings in this case and upon all prior papers, actions and proceedings heretofore had herein. Plaintiff also incorporates herein the ECF case file in the Southern District case of <u>Perez et al v. Time Moving & Storage Inc. et al</u>, 08-CV-2775 (CM).

4. Because the objections are heavily fact-based – the process of reaching settlement, the justifications for settlement and class certification etc., Plaintiff will submit this "speaking" declaration with appropriate legal citations as required in lieu of an additional memorandum of law.

## I. BACKGROUND

5. Additional background information can be found in the declaration of Class Counsel Abdul Hassan, in support of the motion for preliminary approval which was filed on June 24, 2009. ECF # 8.

6. The Statement of Compliance filed with the motion for final approval details the compliance with the class action procedure in this case.

## II. THE LAW AND FACTS COMPEL A REJECTION OF OBJECTORS ATTEMPT TO DECERTIFY THE CLASS

### A. Legal Standard

7. In the motion filed on June 24, 2009, Plaintiff examined each of the Rule 23 class certification requirements and demonstrated that each was satisfied in this case. The Court granted preliminary class certification by order entered on July 2, 2009. Objectors now seek to decertify the class, or in the alternative to create sub-classes. However, it is well-established that, 'decertifying or redefining the scope of a class should only be done where defendants have met their "heavy burden" of proving the necessity of taking such a "drastic"

step.' In re Vivendi Universal, S.A. Securities Litigation, 2009 WL 855799, 3 (S.D.N.Y., 2009). See also Gordon v. Hunt, 117 F.R.D. 58, 61 (S.D.N.Y., 1987) ("At the outset, it is noted that defendants bear a heavy burden to prove the necessity of either the drastic step of decertification or the less draconian but still serious step of limiting the scope of the class.").

8.  In Shariff v. Goord, 235 F.R.D. 563, 569 (W.D.N.Y., 2006), the court reiterated some well settled rules and stated in relevant part as follows:

> Courts are required to construe Rule 23's requirements liberally. Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 563 (2d Cir.1968). Courts should resolve doubts about whether or not Rule 23 has been satisfied in favor of certification. In re Industrial Diamonds Litigation, 167 F.R.D. 374, 378 (S.D.N.Y.1996) (citations omitted).

9.  The decision as to whether to certify a class is committed to the sound discretion of the Court and is subject to an abuse of discretion standard on appeal.

## B. The Class to be Finally Certified

10. Plaintiff seeks certification of the following class of persons:

> All individuals employed by Defendants between January 1, 2002 and the Effective Date (as defined in the Settlement Agreement) (the "Relevant Period") as an hourly employee in the following functions: (1) Drivers, (2) Movers, (3) Installers, (4) Warehousemen, and (5) Warehouse Supervisors, and who are listed on Exhibit A to the Settlement Agreement

## C. Objectors' Opposition to Certification is Without Merit

11. While Objectors in this case are arguing against final certification, Objectors are arguing in favor of certification in a competing class action they are prosecuting in the Southern District. See <u>Perez et al v. Time Moving & Storage Inc. et al,</u> 08-CV-2775 (CM). The best arguments against Objectors argument in this case are Objectors' arguments in the <u>Perez</u> case and those arguments are incorporated herein as **Exhibit 1** – Objectors memorandum of law in support of their motion for class certification in <u>Perez.</u>

12. The Plaintiffs in <u>Perez</u> are the sole Objectors in this case. Both this case and U seek to recover unpaid overtime wages on a class basis from Defendants Time Moving and Time Record and Storage.

13. In opposing class certification in this case, Objectors stated that, "the Motor Carrier Exemption requires a fact specific inquiry not amenable to a generic assessment of employees based on job titles." See Obj. Memo. Pg 4. These points about "fact specific inquiry" and "generic assessment" have equal applicability to the <u>Perez</u> case in which the class consists of two job titles (supervisors and helpers) and where Defendants Time Moving are asserting the motor carrier exemption. However, Objectors nonetheless make arguments in favor of class certification in Perez that would also apply in this case and which would debunk their anti-certification arguments here. These arguments are contained in **Exhibit 1** and are incorporated here.

14. Nonetheless, as laid out in the motion for preliminary certification, Defendants' policy of denying all class members overtime based on the Motor Carrier Exemption is a common

thread and common nucleus that easily satisfies the commonality and typicality requirements of Rule 23.

15. Objectors individualized inquiry arguments seems directed more to the preponderance requirement of Rule 23. As to preponderance, the question is whether issues common to the class predominate over those elements that require an individualized inquiry. See FRCP Rule 23(b)(3). As such, the presence of elements that require some individualized inquiry does not destroy certification as long as the common issues such as the overtime denial policy based on the MCE predominates – this is certainly the case here.

**D. Settlement is an Important Certification Factor**

16. Because the possibility for some individualized inquiry may pose problems in managing the class action, the settlement reached in this case is a very important factor in the certification analysis. In <u>Amchem Products, Inc. v. Windsor,</u> 521 U.S. 591, 620 (1997), the U.S. Supreme Court stated in relevant part that, "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial."

17. In terms of advocacy in favor of certification, the absence of opposition will likely make the advocacy more compelling.

18. Given the high burden to justify decertification, the mandate to construe Rule 23 liberally in favor of class certification, and the wide discretion given to the Court's decision on certification, the law and facts favor a final order of class certification here.

### E. No Need for sub-classes

19. Objectors argue that if the Court does not decertify the class, it should create sub-classes and appoint them to represent their sub-classes in settlement etc.. As pointed out above, like the heavy burden that must be met for decertification purposes, altering the class structure by creating sub-classes is also subject to a tough burden. In the instant case, creation of sub-classes is not warranted by law and is totally unnecessary from a practical stand point and when viewed in the best interest of the class.

20. It seems that creation of sub-classes will benefit counsels for objectors and no one else. In fact, creation of sub-classes constitute the type of material change which under the settlement and agreement and this Court's order will nullify the settlement and deprive the class members of the money they are currently entitled to under the agreement.

21. If this court were to credit Objectors' sub-class logic, it would have to create sub-classes beyond those objectors want and things can spin out of control.

22. Furthermore, the fees and administrative costs of representing and litigating several sub-classes instead of one class will only reduce the share of the settlement available to the class

and while this may be in the interest of others, it is obviously not in the best interest of class members to receive less money instead of more.

23. Objectors sub-class argument centers on their claim that the Representative Plaintiff has interests that are antagonistic to theirs and as such cannot adequately represent them. First off, the Objectors and the representative Plaintiff each fall within the class definition and as such, they are sufficiently united – they were all denied overtime because of Defendants' reliance on the motor carrier exemption.

24. Very importantly, and very fortunately, it is easy to judge whether the class was adequately represented by the Representative Plaintiff in this case because we are able to review the actual settlement – in most class actions settlement occurs after the "adequacy of representation" determination must be made.

25. The settlement is examined in greater detail below and it should be very clear that the Representative Plaintiff more than adequately represented the objectors and the other class members.

26. Significantly, if Objectors truly believed they were not adequately represented, they could have opted-out and continued their case in the Southern District.

## III. THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

## A. Legal Standard

27. In D'Amato v. Deutsche Bank,  236 F.3d 78, 85 (2d Cir. 2001), the Second Circuit laid out

the legal standard for reviewing and approving a pre-certification class action settlement and

stated in relevant part as follows:

>Under Federal Rule of Civil Procedure 23, a class action cannot be settled without the approval of the District Court. *See* Fed.R.Civ.P. 23(e). The District Court must carefully scrutinize the settlement to ensure its fairness, adequacy and reasonableness, *see County of Suffolk v. Long Island Lighting,* 907 F.2d 1295, 1323 (2d Cir.1990) (citing *Plummer v. Chemical Bank,* 668 F.2d 654, 658 (2d Cir.1982)), and that it was not a product of collusion. *See Joel A. v. Giuliani,* 218 F.3d 132, 138 (2d Cir.2000). This Court will disturb a judicially-approved settlement only when an objector has made a "clear showing that the District Court has abused its discretion." *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 455 (2d Cir.1974), *abrogated on other grounds by Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43 (2d Cir.2000). When a settlement is negotiated prior to class certification, as is the case here, it is subject to a higher degree of scrutiny in assessing its fairness. *See Long Island Lighting,* 907 F.2d at 1323 (citing *Weinberger v. Kendrick,* 698 F.2d 61, 73 (2d Cir.1982)). The District Court determines a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms. *See Malchman v. Davis,* 706 F.2d 426, 433 (2d Cir.1983) (citations omitted).

28. In terms of substantive fairness, the Second Circuit in D'Amato, 236 F.3d *at* 86, further

stated that:

>A district court reviewing a settlement must consider the following nine factors, enumerated initially in Grinnell Corp., 495 F.2d at 463:
>the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]

8

## **B. Procedural Fairness: The Negotiation Process**

29. Objectors in their memorandum of law (pg 14-16), mention the various settlement updates the parties provided to the Magistrate in this action, indicate their lack of knowledge as to how the settlement negotiations were conducted and seem to lament the settlement progress in this case as opposed to their inability to make any progress with the same Defendants in the competing class action Objectors are prosecuting in the Southern District. In the fourteen month since Objectors and their counsel filed the competing Southern District case, they only managed to get their case dismissed, and even after they amended the complaint, they have not achieved settlement for anyone, have not been able to certify a class and don't even seem to have obtained much discovery, if any. Not dissuaded by their lack of progress and success, Objectors and their counsel have entered this Court and are now seeking to destroy the class certification and settlement we have achieved here through lots of hard work, much to the detriment of the class members. These deeply conflicted Objectors and their counsel in their papers are asking for the discovery Plaintiff's counsel has obtained – presumably so that they can return to the Southern District and continue their case if they are able to destroy this one.

30. In reference to their many arguments about the settlement negotiations, Objectors admit that, 'none of the above "proves" any improprieties, but it suggests that defendants – as sometimes happens in the class action context – were seeking to choose their own plaintiffs.' (Obj. Memo. Pg 16). Objectors' admission should end the inquiry on procedural fairness but Plaintiff's counsel will nonetheless elaborate further on the process to reinforce the conclusion on procedural fairness.

31. As to whether defendants "were seeking to choose their own plaintiffs," settlement is a voluntary undertaking and parties are free to reach settlement with whomever they choose – the only requirement being that any class settlement reached be fair, reasonable and adequate. Also, given the extensive discovery we had done in the <u>Shah v. Time Moving</u> case, we were in a much better position to engage in **informed** settlement discussions with Defendants.

32. Despite Objectors speculation, the settlement in this action resulted from arm's-length negotiations and Plaintiffs' counsel possessed the experience and ability, and engaged in the discovery, necessary to effective representation of the class' interests.

33. Plaintiffs' counsel is very uncomfortable singing his own praises but will reluctantly do so since he must describe his experience and ability to this Court as part of the motion.

34. Plaintiffs' counsel was admitted to the bar in October 2001 and in the almost eight years since then, I have operated my own law firm and have focused almost exclusively in the area of wage and hour litigation like the instant case.

35. During my career, I have litigated numerous wage cases and have won cases at summary judgment, at trial and on appeal.

36. I have litigated what are probably the two leading wage cases in the Second Circuit and New York State. See <u>Barfield v. New York City Health and Hospitals Corp.</u>, 537 F.3d 132 (2d.

Cir. 2008) (Overtime wages); <u>Seenaraine v. Securitas Sec. Services USA, Inc.</u>, 37 A.D.3d

700, 830 N.Y.S.2d 728, (2d Dep't 2007) (Spread-of-hours wages).

37. I have also handled several cases dealing with the Motor Carrier Exemption like this one

including a trial before your Honor in <u>Khan v. IBI Armored Services, Inc.</u>, 474 F.Supp.2d

448 (E.D.N.Y., 2007 - Judge Vitaliano). In <u>Khan</u>, almost every aspect of the Motor Carrier

Exemption was vigorously litigated and your Honor synthesized the advocacy of all sides

and the applicable precedents and produced a written decision on the Motor Carrier

Exemption.

38. On or about June 1, 2007, I filed the case of <u>Shah et al v. Time Moving et al</u>, 07-CV-02226

(ENV)(SMG) on behalf of four Plaintiffs – Stanley McIntosh, Rahamut Shah, Claude

Eastman and Felix Lewis.

39. Prior to filing the <u>Shah</u> case, I spoke with several employees/ex-employees of Time Moving.

I advised most of these individuals that I would not be able to take their cases because of the

Motor Carrier Exemption. I felt the Plaintiffs I did eventually represent in Shah had very

good and winnable cases because of facts and circumstances in their situations.

40. Since the filing of the <u>Shah</u> case, I have now spoken to dozen of employees/ex-employees of

Defendants Time Moving and reached conclusion that I could not represent the

overwhelming majority of them because of the Motor Carrier Exemption.

41. In early 2008, Plaintiff Stanley McIntosh in the <u>Shah</u> case settled his claims with Time Moving – I believe it was accepted that he was an electrician and not a moving person and furthermore, McIntosh had suffered a medical event that made it unlikely that he was involved in loading and moving.

42. After the <u>Shah</u> case was filed, the parties attended the usual court conferences and engaged in discovery. The discovery included document production and several depositions. In early 2008, each of the remaining <u>Shah</u> Plaintiffs was deposed and I deposed Mr. James Dowse who was in charge of legal and operational affairs for Defendant Time Moving.

43. In the process of conducting discovery and the depositions, I did further detailed research on the Motor Carrier Exemption that added to the knowledge I already had from prior work involving the MCE.

44. Given my immersion in the <u>Shah</u> case during the discovery and deposition and my preparations therefore, and my further research of the MCE and of Defendants, I acquired what I think is a very good understanding of Defendants' operations and the duties of its moving employees.

45. In essence, Defendants' are engaged in the moving and storage business. Time Moving is the moving part of the business and Time Record and Storage is the storage part of the business.

46. Defendants have a few warehouses in New York City and a very big warehouse in New Jersey. It is possible that they have more locations.

47. Defendants serve a variety of clients ranging from financial institutions to law firm, within New York City and the tri-state area and even beyond – Defendants say they even handle furniture coming from North Carolina.

48. Defendants are in the business of moving and storing a variety of items from boxes with files to office furniture.

49. Defendants would essentially move items for their clients from the clients' location to Defendants' warehouses and vice versa, or move the items from one client location to another.

50. In servicing a client there are several job titles involved. All jobs are routed through the dispatcher who staffs the jobs. In general, the warehouse supervisors and managers manage the warehouse. The warehousemen move items in and out of the warehouse that come off of trucks or that must go on the trucks. Movers travel with the trucks and help to transport the cargo. **Installers or carpenters like Representative Plaintiff Marcel Alleyne,** carry tools and assemble and disassemble office furniture and equipment. Drivers obviously drive the trucks with the cargo.

51. As an example, Defendant may receive a request from a client who wants furniture delivered and assembled at the client's site. The subject office furniture was previous picked up from the client's site and stored at Defendants' warehouse. The supervisor or manager would process the paperwork and authorize the retrieval of the furniture. The warehousemen would retrieve the furniture and move them to the truck for loading. The movers and driver would travel with the truck or sometime separately to the clien'ts site where the furniture is unloaded to the correct location at the client's site for assembling. The installer like Plaintiff Alleyne, who may have traveled there in the truck or separately, will then use his tools to assemble the furniture. If the driver and movers/helpers have other deliveries to make, they would leave the installer to do his work at one site while they move on to the other sites to make deliveries.

52. It is therefore fair to say that the typical moving job involves the job titles of Manager/Supervisor, warehouseman, mover/helper, driver and installer. Defendants took the position that these five titles were all involved or helped out in packing and loading the vehicles and as such, they were all denied premium overtime compensation by Defendants under the Motor Carrier Exemption as a matter of Defendant's policy. These five job titles were therefore affected by a common policy based on the Motor Carrier Exemption.

53. As a point of clarification, Objectors describe themselves as "helpers" and this would be equivalent to "movers" under the job titles used in the class settlement.

54. During his deposition, Defendants' representative, Mr. James Dowse, said that he had testified in a case before the New Jersey Department of Labor, had invoked the Motor Carrier Exemption defense and the case was dismissed in favor of Defendants. **(See Exhibit 2).** While the NJDOL case is not dispositive of anything, it was one of many things to consider even though I have recovered wages in cases in which the DOL recovered nothing or very little.

55. Furthermore, none of the Time Moving employees I represented or interviewed had ever received overtime wages from any State or Federal Department of Labor or through any class action by any private attorney. It seems this is the first class action in the almost forty-year history of the company that would provide some recovery to all employees within the class definition.

56. As Class Counsel I do not believe it is in the present and future interest of the class or other employees of Defendants to make pro-employer arguments or share my knowledge or thoughts that may benefit the employer in the future – beyond what is absolutely necessary. However, I declined to take the cases of most of the employees/ex-employees of Defendants who contacted me - because of the Motor Carrier Exemption. Based on these many case evaluations I did, and based on all the research, discovery and depositions, I formed the opinion that while there are exceptions, the vast majority of persons within the moving chain would not be able to justify the time and expense of individual lawsuits for overtime pay given the significant handicaps imposed by the MCE.

57. By early 2008, I realized that a class action might be a good way to help the large number of persons who would most likely not bring individual actions, including the people who had contacted me and whose cases I had declined. Based on my years of litigating wage and hour cases, I came to believe that a consent/settlement class action can be very beneficial to both employer and employee - employees who could not justify individual lawsuits would get money they would not otherwise get, and the employer gets some certainty and finality by paying money it might not have to otherwise pay because of the likely absence of individual actions.

58. Prior to filing this class action, I shared the idea of a settlement/consent class action with defense counsel.

59. Although we were having discussions, I felt I needed to file and serve this class action lawsuit so that Defendants would take things more seriously – like any Defendant, and unlike Objectors assertions, Defendants here were reluctant to pay money unless they really had to.

60. In approaching settlement discussions, I looked at all available relief that could be obtained if Plaintiffs were totally successful at trial. Contrary to Objections assertions, I took FLSA liquidated damages and prospective relief in account along with relation back/SOL issues as well as the issue of workers showing up earlier than the official start time without pay. The next key issues were proof of liability and class certification.

61. Without class certification none of the hundreds of class members would benefit from this litigation. However, while certification requirements are satisfied, I felt that without a class settlement, I was not going to pursue class certification. Given the nature of the MCE, obtaining class certification with tough opposition was too much of a hit or miss. Even if class certification was obtained despite Defendants' opposition, the trial may become unmanageable, thus making liability difficult to prove. With a settlement, trial and manageability issues became irrelevant and certification becomes much easier to obtain. To keep some leverage in the discussions I made it clear that even without a class action, I would continue to litigate the smaller segment of cases I believe can withstand the MCE if such cases come my way. Defendants were also aware that I had tried and won the <u>Khan v. IBI</u> case involving the MCE and that in the <u>Shah</u> case I had spent the time and resources to complete discovery and depositions.

62. Apart from the challenges in proving class liability and certification, I felt a settlement would eliminate even subtle retaliation against current employees like Objectors claim to be, because the settlement is with the consent Defendant and class members do not have to affirmatively sue their employer. While retaliation is illegal, as a practical matter it is much better to avoid or reduce it. I actually had two clients back out and decide not to sue at the last minute – both were current employees of Defendants – while I do not know if they felt pressured, now they can get some recovery without having to sue.

63. Also, the benefit to the class would not only be financial – the class notice would alert class members of their rights and they can then choose to opt-out if dissatisfied with the settlement amount and bring a separate action in court or through a government agency as they wished.

64. Another key factor was the economic situation. The financial crisis had started on "wall street" in the Fall of 2007 and businesses large and small were collapsing and many were surviving with much less. I was already dealing with Defendants who could not pay $180,000 in a lump sum even though a lump sum as opposed to the installment plan would benefit them by not keeping the case open longer and risking unexpected action. With the financial crisis, credit that businesses used to pay wage and fund operations just dried up. As we have recently seen, lots of lawsuits against companies like General Motors and Chrysler just disappeared with the bankruptcy and reorganization of even those big companies. Given an economic situation that almost every expert agrees is the worst since the great depression, it made it that more important to get a reasonable deal and get the money to the class before it was too late – ironically, Lehman Brothers survived the great depression but could not survive the current economic crisis.

65. All of the above factors were considered in reaching a settlement figure of $180,000. Getting this number took time and much contentious negotiations. Defendant tried to pay as little as they can and I tried to get as much as I can for the class and after a lot of maneuvering and strategizing we finally agreed to a number. Reaching a settlement number is not the product of science – it is more of an art - settlement is the product of compromise that reflects all the relevant laws, facts and circumstances.

66. I do not share Objectors "all or nothing" approach that either the case has no merit and it should be dismissed or it has merit and is worth much more. (Obj. Memo. Pg 19). This "all or nothing" approach is reckless and if adopted can result in a lot of very disappointed class members. Their all or nothing approach means Objectors are never likely to succeed at settlement – approximately over 90 percent of all civil cases are settled.

67. Objectors took issue with the multipliers that were applied with reference to the five job titles: warehouse supervisors (50%); warehousemen (40%); installers (40%); movers/helpers (15%) and drivers (10%).

68. The percentage multipliers were based on all the information we had obtained in discovery about the different job titles and our understanding of the MCE.  Contrary to the Objectors argument, the claims of class members who did drive are not totally worthless as there are arguments they can make and there is always compromise in settlement. In addition, the job title of mover/helper is very close to the job title of driver in terms of the MCE. The MCE regulation lists the titles of drivers and drivers' helpers among the four titles eligible for the exemption. As I understand it, the job of the helper/mover is to help the driver with the load. This is why these two job titles received lower multipliers. We also felt that the unlike the movers/helpers and the drivers, the installers and warehousemen had jobs away from the trucks and hence, likely less need or opportunity to load within the meaning of the MCE. The installers' duties were to assemble and dissemble furniture. The duties of the warehousemen were to handle cargo in the warehouse. Because supervisors were responsible for paperwork

and were senior in rank, they were the least likely to perform physical labor such as loading trucks and as such, they got the highest multiplier – 50 percent.

69. In terms of adequately representing the class, the representative Plaintiff obtained a recovery for the driver title that is more than the nothing the Objectors claim this title should receive, and the titles of supervisor and warehousemen receive the same or greater multipliers than the **Representative Plaintiff's title of installer**. It seems, based also on the declarations of Objectors, that they are in a title (driver's helper's) that is eligible for exemption under the MCE and are almost in the same boat as the drivers – using Objectors' logic that the drivers are entitled to nothing, Objectors as drivers/helpers may also be entitled to nothing under this logic but under the representation of Plaintiff Alleyne they are receiving a 15% multiplier. It is therefore clear that Plaintiff Alleyne more than adequately represented the class as a whole.

70. Because the $180,000 figure and the various multipliers were the product of professional judgment and duty to the class and not of any rigid formula, it was important that the notice to class members contained the exact amount of money the class member would get under the settlement. Regardless of how the analysis was done, a class member receiving a notice can look at the actual amount of money due him or her and if the amount was too low, the class member could exercise his or her right to opt-out of the litigation.

71. Significantly, the class members were notified of their settlement and then given 30-days to opt out. This is not a situation where the class member learns of the settlement share after the opportunity to opt-out has gone and is now stuck with no way out.

72. We also spent lots of time fighting over the language in the agreement, the payment schedule etc. For example, Defendant wanted a general release but after much negotiating we narrowed the release to cover only Defendants' pay practices. Another point of disagreement was confidentiality – Defendants wanted confidentiality by all class members but after much negotiating we narrowed the confidentiality to cover only the named Plaintiffs and we softened the language to adjust for several factors. There were numerous other points I took issue with in protecting the interest of the class.

73. Cases always take longer than parties would like. Defendants had to assemble data for hundreds of class members and the parties had very contentious negotiations over numerous points of disagreement. When we reported a settlement in principle, the details still had to be worked out and the devil is always in the details. By the time Objectors scheduled a briefing of their certification motion in their Southern District case, we were done with our negotiations here except for few minor refinements and although the proceedings in the Southern District brought more attention to the matter, the class certification motion we filed in this case on June 24, 2009 was the natural next step.

74. Plaintiffs' counsel's June 25, 2009 letter request for an expedited hearing or approval was made because the motion papers contained hard dates which could become meaningless if

time was allowed to pass - the planning and administration of the class could also have been adversely affected. Also, the fact that settlement and the motion for certification took many months to materialize does not mean we should let more time elapse – it is in the best interest of the class to distribute the settlement monies as soon as possible after settlement is reached.

75. Plaintiffs counsel fights hard for his clients and will oppose any settlement that is not fair and reasonable. The case of <u>Velazquez v. St. Barnabas Hospital</u>, 57 A.D.3d 251, 867 N.Y.S.2d 681 (1st Dep't 2008), is one of many examples. In <u>Velazquez</u>, Defendant got the Court to require my client, Ms. Velazque,z to sign a settlement agreement she did not agree to and which was not in her interest. Even thought he settlement amount was only $3,500, I appealed the matter all the way to the NY Court of Appeals where it is now pending. I did so to further the interest of my client even though in doing so I incurred over about $100,000 in fees and costs in the case that I will not recover even if New York's highest court rules in my favor.

76. Based on the preceding the class settlement here was procedurally fair.

## C. Substantive Fairness – The Grinnel Factors

77. In terms of substantive fairness, the Second Circuit in <u>D'Amato v. Deutsche Bank</u>, 236 F.3d 78, 86 (2d Cir. 2001) stated in relevant part that:

> A district court reviewing a settlement must consider the following nine factors, enumerated initially in *Grinnell Corp.,* 495 F.2d at 463:
>
> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of

establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]

### Factor 1: Complexity, Expense and Duration

78. As a class action, especially one dealing with the Motor Carrier Exemption, this case is complex and will get even more complex if discovery and trial are done on class basis. With a class of over four hundred persons, depositions can easily exceed several dozen in number and wage and other records for a six-year class period will easily amount to tens of thousands of pages – the Shah litigation has been very involved and there are only three plaintiffs in that case. We also have the likelihood of numerous motions and possible interlocutory and post-judgment appeals etc. A settlement like the one we have now, will eliminate all the complexity and immense case management difficulties by making further discovery and trial unnecessary. Complexity and expense go together – given the high degree of complexity here, the expense of this litigation in the absence of settlement will be very high. The dozens of depositions will costs tens of thousands of dollars, possible expert witnesses will costs tens of thousands of dollars more and given the volume of discovery material for the whole class, we may need to engage thirty-party vendors at an additional costs of tens of thousands of dollars. Even more significantly, the legal fees, in light of the complexity and duration of the case will possibly exceed the amount of wages recovered. Given the aforementioned complexity, the time to litigate this class action through trial and possible appeals can be more than seven years. The Khan v. IBI motor carrier exemption case which I tried in this Court took about three years from filing to judgment. The Shah MCE case has been going on for over two years now. This action has been pending for the last fourteen months or so.

Given the large size and complexity of this case, a judgment may be several years away and given that interlocutory appeals are not uncommon in class actions, the duration may even be longer. Also, we must also take into consideration the expense and burden on the Court which obviously would be enormous and unnecessary since we currently have a fair and reasonable class settlement.

## Factor 2: Class Reaction to Settlement

79. The reaction of the Class to the settlement is clearly one of the most important factors. The claims belong to the class members and if they do not object, great deference should be given to their position in assessing fairness. The information on objections, opt-outs and class size etc., is laid out in detail in the Statement of Compliance filed with the motion for final approval. The only objections to the settlement in this case comes from three individuals who are prosecuting a competing class action in the Southern District and therefore have an irreconcilable conflict of interest because it seems they are trying to destroy this case and hurt the class members here in order to advance their own competing case in the Southern District. Significantly, apart from these three competing and conflicted Objectors, not **a single class member has objected to the settlement**. This lack of objections is remarkable but unsurprising since it seems that this is the first time in the almost forty-year history of Defendants that their workers on a class basis are recovering wages through any type of action, whether government or private. In terms of opt-outs, we have six opt-outs by individuals who are represented by counsel and already had their own actions going. Only one other individual opted out of this class of a few hundred people. **See Statement of**

**Compliance**. Given the almost unanimous and remarkable positive reaction to the settlement, this Court should find the settlement to be fair, adequate and reasonable.

### Factor 3: Stage of Proceedings/Discovery Completed

80. As laid out in detail under the section on procedural fairness above, this case grew out of the discovery that was done in the <u>Shah v. Time Moving</u> case which is also pending before your Honor for more than two years now. Both this case and <u>Shah</u> involves the same issues and the same Defendants – claims for unpaid overtime wages and the MCE defense invoked by Defendants Time Moving. Defendants were deposed in the <u>Shah</u> case through Mr. James Dowse and all three Shah Plaintiffs were deposed – lots of documents were also produced. In addition, I have been contacted by numerous current and former employees of Defendants for representation and in the process I have interviewed them and obtained more information. Also, in the course of our settlement discussions, Defendants provided me with pertinent information as to the class, damages etc. By contrast, the objectors seemed to have obtained little or no discovery in the fifteen months since their suit in the Southern District was filed. As such, given the discovery and information obtained by Class Counsel he was able to engage in informed settlement discussions.

### Factor 4: Risks of Establishing Liability

81. The Objectors argue that the requirements for class certification cannot be met in this case. Obviously, without class certification there cannot be any class liability. As such, Objectors are in effect arguing that the chances of establishing class liability are zero. While I do not believe the chances are zero, and while some people will undoubtedly have strong claims

despite the MCE, the risks of proving liability on a class basis are high – there are members of the settlement class whom I have previously declined to represent in individual actions because of the MCE. Objectors further argue that certain members of the class with the title of driver, cannot possibly establish liability and we have the case of a non-driver who lost his overtime case before the NJDOL based on the MCE. (See Exhibit 2). As drivers' helpers, Objectors are in one of four categories of workers under the MCE regulation that are eligible for exemption and may find themselves in the same boat as drivers. Settlement always calls for compromise and for some recovery rather than none. Once again, while some people who worked for Defendants will no doubt have very strong claims, proving liability on a class basis is very risky. In fact, given the difficulties in establishing certification and liability my judgment would be not to pursue a class action in the absence of settlement. I would instead bring select cases for persons who have very strong individual claims after careful evaluation as I have done in the <u>Shah</u> case.

## <u>Factor 5: Risks of Establishing Damages</u>

82. Because the class is limited to persons paid by the hour, records or data of hours worked and paid would make it easier than usual to prove damages. Where records or data are available, proving damages in overtime cases is usually easier than other cases such as personal injury cases. However, before we can get to damages, we must establish certification and liability and these are tough hurdles.

## <u>Factor 6: The Risks of Maintaining the Class action Through the Trial</u>

83. Objectors forcefully argue that the requirements for class certification cannot be met in this case. Based on the anti-certification arguments of Objectors it is clear that we would not be able to even get a class much less maintain one. However, even a more genuine analysis than that of Objectors would reveal challenges in maintaining a class action in the absence of settlement. If class certification was challenged by Defendant, the risk/reward ratio will dictate against seeking certification and it would be my judgment not to litigate this case as a class action in the absence of settlement. Instead, I would litigate select individual cases that are strong and very winnable. Even if we were to obtain certification over Defendants' opposition, the discovery and trial will be very difficult to manage, especially the liability portions – settlement eliminates all the difficulties in manageability because with settlement we no longer have to continue with discovery and conduct a trial.

**Factor 7: The Ability of the Defendants to Withstand a Greater Judgment**

84. As I outlined above in describing the settlement negotiations, the worst economic crisis since the great depression which started in late 2007 and continues today with the highest unemployment rate in more than a generation, was a factor in settlement discussions. As we were discussing settlement, Defendants made clear that without an installment plan to fund the settlement, they cannot do a deal because of Defendant's financial situation. Defendant maintained the need for an installment plan even though I applied a lot of pressure on this point and even though it would have been in their interest to pay quickly – who knows what can happen if the case lingers. In addition, we are operating in the most difficult financial situations since the great depression – ironically, a financial giant like Lehman Brothers survived the great depression but could not survive this financial crisis. I was aware that

many of Defendants' clients are financial institutions and law firms here in New York City –
many of whom have been hit hard by the economic crisis. In the financial situation we are in,
it would be a mistake to assume any business can withstand any judgment. As an example,
Plaintiffs who had sued General Motors and Chrysler have seen those cases disappear with
the bankruptcy and reorganization of those companies. Even companies that did not file for
bankruptcy are abrogating contracts, downsizing in every aspect and more and more are
defaulting on their financial obligations based on news reports. Financial experts seem to
agree that the economy will not return to its former self for a long time – they make the point
that the extra-ordinary growth and wealth of the past was created by excess leverage
(borrowing lots of money to take lots of risks) and with the terrible lessons learned, we are
not likely to see the same leverage again. In fact, lending institutions are cutting back on
credit card limits and credit lines for businesses and obtaining credit is probably more
difficult than it has even been in recent times – American businesses depend heavily on
credit to cover things like payroll, operations and to even pay something like a settlement or
judgment.

### Factor 8: The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery

85. Based on numbers provided to me by Defendants, the gross unpaid overtime for the class
over the class period of about six years is approximately one million and seventy-four
thousand ($1,074,000) dollars. The $180,000 class settlement represents about 17 percent of
the best possible recovery. Assuming in a perfect world, Objectors' arguments for FLSA
liquidated damages and non-compensable hours (allegedly not getting paid for coming in
early) were credited to the maximum, the $180,000 settlement would not represent about 13

percent of the best possible recovery. In <u>Grinnell v. City of Detroit,</u> the Second Circuit

upheld as reasonable, a settlement that was about 12 percent of best possible recovery even

though in <u>Grinnell</u> there was an antitrust action by the government that favored the Plaintiffs.

In this case, the only government action we know of (the NJDOL case) favored the

Defendants (See Exhibit 2) and yet the percentage recovery here is still higher that that found

reasonable in <u>Grinnell</u>. In <u>D'Amato</u>, the Second Circuit found the settlement to be fair and

reasonable even though one Objector argued that the entire settlement fund could not even

cover his individual claim – this is clearly not the case here. The Second Circuit in <u>Grinnell</u>

also pointed out that a reasonable settlement can even be less than one percent of best

possible recovery depending on the facts and law – in this case the Objectors argue that it

would be reasonable for class members with the title of driver to get nothing.


### Factor 9: The Range of Reasonableness of the Settlement Fund to a Possible Recovery in Light of all the Attendant Risks of Litigation

86. When all the attendant risks are taken into consideration, the recovery here is fair, reasonable

and adequate. In fact, the settlement is likely more than the possible recovery in the absence

of settlement when all factors are considered. First, Objectors and their counsel claim that the

class certification factors cannot be met in this case. As such, under the logic of Objectors,

there can be no class recovery (without certification) and as such, the $180K recovery is

$180K more than would otherwise be obtained under Objectors' logic. I have also made it

clear that in the absence of settlement, and given all the challenges that would then be present

in proving certification and liability on a class basis, the risk/reward ratio would not favor a

class approach and I would advise the named Plaintiff Marcel Alleyne to proceed on an

individual basis. It therefore seems clear that the recovery is excellent when the attendant risks of litigation are taken into account.

87. With all nine <u>Grinnell</u> factors favoring a finding of reasonableness, this Court should find that the class settlement in this case is fair, reasonable and adequate.

## IV. OBJECTORS' REMAINING OBJECTIONS

88. Most or all of Objectors' objections should have been addressed in the above paragraphs. However, certain specific objections will be addressed below.

### A. Counsel Fees

89. The fees agreed to by the parties and preliminarily approved by the Court is 1/3 of the settlement fund of $180,000 which equals about $60, 000.

90. On page 20 of their Memorandum, Objectors argue that, "While ordinarily a one-third recovery might appear reasonable, it is not here, for two reasons." Objectors first claim that some people may not cash their checks which would result in a greater than 1/3 fee for class counsel. Like with any contingency fee, the fee can be more than the lodestar value of work or it can be less. The fixed fee involves risks and benefits for class counsel and others. In the instant case, if Defendants were to agree to the making of a fee application they certainly would have discounted the $180,000 settlement fund by more than 1/3 given greater likelihood that the time expended on the case, the time expended on time-keeping and fee applications, the time expended on objections, motions and possible appeals, and the possible

of a multiplier will easily exceed $60,000. By agreeing to a fixed 1/3 fee, Class Counsel is running an almost certain risk of underpayment but such a concession was necessary to effect settlement and bring certainty to the case, Defendants and the class. With a limited settlement fund, it is not in the interest of the class for fees to keep increasing and their share of the settlement keeps decreasing. Defendants also were not willing to take this risk of open-ended fees. If Class Counsel was being paid on an hourly basis, the objections raised in this case would have cost class members a sizeable amount of money in fees because of the large amount of time that has been expended in responding to these objections.

91. The $60,000 fee here is on the low end of fees by comparison to other cases. In the Khan <u>v. IBI</u>, motor carrier exemption case, the fees and costs were settled for about $70,000 and the actual fees were higher than that. That was a single Plaintiff case and while this case has not gone to trial it does involve hundreds of class members and lots of work. In the case of <u>Khan v. Burn International Security Services</u>, Civ Action #: 07-CV-2502 (FB)(JO), the fixed fee for me that was agreed to by the parties and approved by Judge Block here in the EDNY after a fairness hearing was about $87,000 and that case involved less than half the number of class members that we have in this case. In <u>Budraj v. Hudson News Service</u>, Index # 9037-08 (Queens Supreme), the fixed fee agreed to for me by the parties and approved by the Court was $50,000 and that case involved less than half the number of class members that we have in this case. Both the <u>Khan</u> and <u>Budraj</u> cases were settlement class actions like this one and they involved big corporations with big law defense counsel who engaged in tough negotiations on fees and yet the fees in those cases were relatively higher than the 60K here

even though there are more class members in this case as well as objections – those other cases involved no objections.

92. Even though my fee in this case is a fixed 1/3 fee and are not calculated on an hourly basis, Objectors argue that my hourly rate should be $250 instead of $450. In the <u>Barfield v. NYC Health and Hospitals Corporation</u> cited above, the Second Circuit affirmed a fee decision awarding me $350 an hour for work done in 2006. With just an adjustment for legal inflation at 6% a year, that $350/hr rate would now be about $417/hr, when we then factor in an increase for increase in skill and competence even without taking into account other business factors, we easily have a rate that can be over $500/hr or more but $450/hr is the official rate until next year so I will keep it at that. In 2002, Judge Gleeson here in the EDNY awarded me the $250 rate ($375 adjusted for inflation, not including any increase for skill/competence and other business factors) I requested in the case of <u>Hassad v. Regents of the University of California</u>. As laid out above, I have considerable experience in the field of wage and hour litigation including complex litigation such as class action cases.

93. At my hourly rate of $450 an hour, the fees work out to about 133 hours for a class of 417 persons or 25 minutes per class member. This covers the contentious and lengthy negotiating process as laid out above, the preparation of class materials, the motion for preliminary approval, review and filtering of class data to eliminate duplicates, bad addresses, and ensuring settlement amounts accurately matched up to members names etc. We then had to prepare customized notices for all class members using the database and word processing and then verifying the packages were accurately put together and tracking the mailing and returns

so that at the end we can prepare a detailed and accurate certificate of compliance. I then had to handle numerous calls from class members who called after receiving notices or hearing about the settlement from others. Next we had to deal with returned notices and try to obtain new addresses and then repeat the process to do a supplemental mailing for the new addresses obtained. I had to prepare and file the motion for final approval and Statement of Compliance. Of course, I have also been forced to deal with the objections raised by objectors which have been very time-consuming – having to review the Southern District litigation and researching and responding to the many points raised in the motion papers – this declaration alone is several dozen pages long. Things are not over yet, as I still have to oversee the administration of payments if final approval is granted and then deal with even more phone calls from class members when those checks are mailed. I also have to keep records of the hundreds of payments made for future reference. And because the fee is fixed and will not be increased by Defendants if there is further litigation in the case – I will incur a significant loss on the fees.

## **B. Settlement Process**

94. On page 17 of their Memorandum, Objectors state that they do not know what the settlement process was like or how the settlement was arrived at and cannot properly judge fairness as a result. This information is provided above under the section on Procedural Fairness. Objectors strongly argue that they have strong claims and that the settlement is not fair to them. If this is so, why did Objectors leave their competing case in the Southern District and chose to affirmatively join this class action instead of opting out of this case? Objectors

actions seems to contradict their words. As detailed in the Statement of Compliance, counsel for Objectors opted out two of their other clients but did not opt-out the Objectors here?

### C. Scope of Release

95. On page 18 of their Memorandum, Objectors state that the class release improperly includes claims not mentioned in the complaint and not considered in the settlement discussions. They specifically mention their claim that some class members were told to come in at say, 7AM but did not start work until later and were not paid from the 7AM time but from the later start time. Contrary to Objectors' assertion this issue was explored at the deposition and was considered in the settlement discussions. This issue was not compelling one way or another in a class context and when added to the class action it added to the complexity and hence increased the difficulty of proving class certification and liability and probably had a net negative effect instead of a positive effect in the class context. Nonetheless, this issue was explored and considered and whatever value it has, if any, is reflected in the settlement amount. Defendants fought hard for a general release but I fought even harder to narrow the release to just Defendants' pay practices which I had a chance to examine through the course of the Shah and Alleyne cases.

### D. FLSA Liquidated Damages

96. On page 18 of their Memorandum, Objectors state that, "Although the applicability of the FLSA and NYLL are the same, the remedies provided by each law are different." Objectors specifically state that while a NYLL class action does not provide for liquidated damages, the FLSA does provide for liquidated damages. Once again, all available remedies, including

FLSA liquidated damages were taken into account. FLSA liquidated damages was considered, in light of the strengths and weaknesses, in ascertaining potential liability at trial. However, what is possible and what is likely are two very different things. If Objectors are truly confident that the can obtain base wages plus liquidated damages, notwithstanding Defendants' defense to liquidated damages, they had the option of opting out and continuing their case in the Southern District.

### E. Relation Back Doctrine

97. Objectors claim Representative Plaintiff did not adequately represent the class because under the relation back doctrine this case should have related back to the filing of the Shah case and the class period should have been longer. Even though the Alleyne complaint mentions relation back, the fact is that FRCP Rule 15 which deals with relation back, limits the doctrine to amended pleadings and the Alleyne complaint was not an amendment of the Shah complaint – it was a separate complaint and action.

### F. Prospective Relief

98. On page 19 of their Memorandum, Objectors argue that the settlement should be rejected because it does not include prospective relief in the form of requiring Defendants' to pay overtime in the future. It is obviously much more beneficial for Defendants to meet the requirements of the MCE than to start paying overtime. The absence of prospective relief in the settlement has nothing to do with the fact that class representative Alleyne is an ex-employee – it has to do with the facts and the law and realities of the case and settlement. If Defendants truly believe they can obtain full base wages, plus full liquidated damages plus

prospective relief they should have opted out of this class action and obtain all these remedies in the Southern District case. One has to suspect they are not serious about recovering everything.

99. It is truly puzzling how Objectors intend to obtain complete and perfect relief for a class they argue should not be certified?

100.    It is worth repeating that all class members were notified of the settlement terms and their settlement share and had the opportunity to opt-out or object. Yet, only seven members opted out and only three objected.

## V. OBJECTORS' MOTION TO INTERVENE SHOULD BE DENIED

101.    This Court's July 2, 2009 order granting preliminary approval and the notice to the class permitted class members to object to the settlement in this case. As such, to the extent Objectors seek a role beyond the right to make objections set out in the order of preliminary approval, their motion to intervene should be denied.

102.    In County of Suffolk v. Long Island Lighting Co., 710 F.Supp. 1422, 1426 (E.D.N.Y.,1989), the Court stated in relevant part that:

> The court has broad discretion to appoint counsel for the class. Cullen v. N.Y. State Civil Serv. Comm'n, 566 F.2d 846, 848-49 (2d Cir.1977); In re "Agent Orange" Product Liab. Litig., 818 F.2d 179, 187 (2d Cir.1987). A corollary is the power to restrict the activities of those attorneys who represent individual class members but who are not lead counsel for the class itself. Farber v. Riker-Maxson Corp., 442 F.2d 457, 459 (2d Cir.1971); Vincent v. Hughes Air West, 557 F.2d

759, 773 (9th Cir.1977). When a class is certified, the district court may simultaneously appoint a class representative for the purpose of conducting settlement negotiations. Cf. Ace Plumbing & Heating Co. v. Crane Co., 453 F.2d 30, 33 (3d Cir.1971).

103.    In Long Island Lighting, certain objecting class members were allowed to intervene to air their objections but the Court rejected their requests to take part in settlement discussions or play any role beyond airing their objections. The Court allowed the sole Class Counsel to represent the class. The same approach should be taken here.

104.    Objectors motion to intervene should also be denied because their conduct is somewhat baffling and they may have a profound conflict of interest with the class. In terms of the baffling conduct, Objectors argue that the class should not be certified and at the same time Objectors would like to get a better settlement for the class even though without class certification you cannot have a class settlement. Given that destruction of the class which Objectors seek cannot possibly be in the best interest of the class, and given that Objectors are seeking certification in a competing class action in the Southern District, it does seem that Objectors have joined the class in this case to destroy it so that their competing class action can benefit. The Court should certainly question Objectors about this and if true such conduct would constitute bad faith especially since Objectors' conduct has been very destructive and costly in terms of time and resources as well as serious delays to class members.

## IV. CONCLUSION

105.    In the final analysis, the motion for intervention should be denied, the class should be finally certified as defined above and the class settlement should be approved as fair,

reasonable and adequate, the Court should grant the other relief specified in the notice of

motion, together with such other, further and different relief as the Court deems just and

proper.


I declare pursuant to 28 U.S.C. § 1746 under penalty of perjury that the foregoing is true and

correct to the best of my knowledge and understanding.


Executed on September 20, 2009

___/s/ Abdul Hassan_____

Abdul K. Hassan, Esq. (AH6510)
215-28 Hillside Avenue
Jamaica, New York 11427
Tel: 718-740-1000

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Edwin Perez and Javier
Yangua, Individually and on
Behalf of All Other Persons
Similarly Situated,                            CASE NO. 08-CV-2775

             Plaintiffs,

– vs. –

                                  **MEMORANDUM OF LAW IN SUPPORT**
Time Moving & Storage Inc.,      **OF PLAINTIFF'S MOTION FOR**
The Time Record Storage          **CLASS CERTIFICATION**
Company, LLC, Hyperion
Associates, LLC, John Kevin
Gilgan, Joseph P. Candella,
and James Dowse,

             Defendants.

---

**MEMORANDUM OF LAW**
**IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

---

**CERTIFIED FOR CLASS TREATMENT UNDER FED.R.CIV.P. 23.**

The class which Plaintiffs seek to have certified here is defined as:

All persons employed by defendants as "supervisors" or "helpers," who did not load trucks, who were not paid the statutory overtime premium for hours worked in excess of forty hours in a workweek, or who were not paid for all hours worked in a day, at any time between March 17, 2002 and the date of final judgment in this matter (the "class period.")

Plaintiffs seek certification under FED. R. CIV. P. 23 of two separate legal claims: (a) a claim for unpaid overtime wages under the New York Labor Law against the corporate and individual defendants, and (b) a claim for failure to pay wages under New York Labor Law against the corporate and individual defendants.

Federal Rule of Civil Procedure 23 provides that a court must certify a class where, as here, Plaintiffs satisfy the four prerequisites of Rule 23(a), as well as one of the three prerequisites of Rule 23(b). This is not an inquiry into the merits of the action; at this stage, the claims should be taken as true. *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 291, 293 (2d Cir. 1999) ("In deciding a certification motion, district courts must not consider or resolve the merits of the claims of the purported class." (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)); *Shelter Realty Corp. v. Allied Maint. Corp.*, 574 F.2d 656, 661 n. 15 (2d Cir. 1978) ("it is

proper to accept the complaint allegations as true in a class certification motion"); *Ansoumana v. Gristedes Operating Corp.*, 201 F.R.D. 81, 85 (S.D.N.Y. 2001). Courts generally do consider evidence alongside the pleadings in determining whether certification is appropriate. *Hirschfeld v. Stone*, 193 F.R.D. 175, 182 (S.D.N.Y. 2000) ("a court may consider material outside the pleadings in determining the appropriateness of class certification"); *Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 571 (2d Cir. 1982) ("in making a certification decision, a judge must look somewhere between the pleading and the fruits of discovery" (internal quotations omitted)); *Ansoumana*, 201 F.R.D. at 85.

### a. PLAINTIFFS SATISFY ALL REQUIREMENTS OF RULE 23(a).

To be certified, a class must meet the four requirements of Rule 23(a): "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims . . . of the representative parties are typical of the claims . . . of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(1-4); *see, e.g., In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 132-33 (2d Cir. 2001), *cert. denied*, 536 U.S. 917 (2002); *In re Towers Fin. Corp. Noteholders Litig.*, 177 F.R.D. 167, 169 (S.D.N.Y. 1997). The class sought here meets all four criteria.

8

### i. **NUMEROSITY IS SATISFIED.**

The numerosity requirement of Rule 23(a)(1) is met when Plaintiffs demonstrate the impracticability of joinder; the rule does not require impossibility. *Robidoux v. Celani*, 987 F.2d 931 (2nd Cir. 1993). Plaintiffs can satisfactorily demonstrate that the number of potential class members is too large for joinder even if Plaintiffs do not know the exact number of class members. *Schwab v. Phillip Morris USA Inc*, 449 F.Supp.2d 992 (E.D.N.Y. 2006) The class may include persons already harmed by Defendant's conduct, as well as persons who will be be harmed in the future. *Id.* In the Second Circuit, "numerosity [under Rule 23(a)] is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). The Declarations of the Plaintiffs show that there are likely between 50 and 100 class members.

### ii. **QUESTIONS OF LAW AND FACT ARE COMMON TO THE CLASS.**

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." "Commonality does not mandate that all class members make identical claims and arguments, only that common issues of fact or law affect all class members. Generally, courts have liberally construed the commonality requirement to mandate a minimum of one issue common to all class 16 members." *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D.

193, 198 (S.D.N.Y. 1992) (citations omitted); *see also Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) ("The commonality requirement is met if Plaintiffs' grievances share a *common question* of law or of fact.") (emphasis added) (citing *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 166-67 (2d Cir. 1987)); *Ansoumana*, 201 F.R.D. at 86 ("a single common question may be sufficient to satisfy this rule") (quoting *Marisol A. v. Giuliani*, 929 F. Supp. 662, 690 (S.D.N.Y. 1996), *aff'd*, 126 F.3d 372 (2d Cir. 1997)).

The question is whether there is a "unifying thread" among the claims to warrant class certification. *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1995). Failing to pay overtime, or failing to pay wages at all for hours employers required their employees to work, is exactly the type of "unifying thread" the commonality requirement envisions. *See Bolanos v. Norwegian Cruise Line Ltd.*, 212 F.R.D. 144, 154 (S.D.N.Y. 2004) (granting class certification in a failure to pay overtime action); *Ansoumana*, 201 F.R.D. at 96 (same).

The complaint here alleges a policy and practice of Defendants' violations. This is not a case where a single plaintiff alleges that he was not paid overtime, or that he was not paid for all hours worked; all members of the class were treated the same and suffered the same damages as a result of Defendants' policies. Plaintiffs share common factual and legal

questions, such as whether (1) Plaintiffs are covered employees under the FLSA and New York Labor Laws; (2) Defendants failed to pay Plaintiffs overtime wages for hours worked in excess of 40 hours in a week; (3) Defendants' refusal to pay overtime was willful and not in good faith; (4) Defendants failed to pay Plaintiffs for all hours worked.  Plaintiffs' action, therefore, clearly satisfies the "commonality" requirement of Rule 23(a).

### iii. REPRESENTATIVE PLAINTIFFS' CLAIMS ARE TYPICAL OF THE CLASS.

Rule 23 (a) requires that the claims or defenses of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove . . . Defendant[s'] liability." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993). Commonality and typicality are related concepts, and neither need be complete for class certification to be proper. *Ansoumana*, 201 F.R.D. at 86-87 (citing *Robidoux*) (if "the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims")). "Since the claims only need to share the same essential characteristics and need not be identical, the typicality requirement is not highly demanding."

11

*Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144 (S.D.N.Y. 2002)  Plaintiffs here are present or former employees of Defendants who allege entitlement to unpaid overtime wages and penalties due to Defendant's violation of plaintiffs' rights under State and Federal Wage and Hour law.  Moreover, "[t]ypicality under Rule 23(a)(3) should be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996). Similarly, individual differences in damages or degree of injury cannot defeat class certification. *Duprey v. CT Dep't of Motor Vehicles*, 191 F.R.D. 329, 337 (D. Conn. 2000) (citing *Trautz v. Weisman*, 846 F. Supp. 1160, 1167 (S.D.N.Y. 1994)).

As discussed above, Plaintiffs and all class members are owed unpaid overtime wages that Defendants have unlawfully refused to pay; Plaintiffs and all class members are also owed wages for hours worked for which Defendants unlawfully refused to pay them.  Accordingly, Plaintiffs' claims satisfy the typicality requirement of Rule 23(a).

### iv. PLAINTIFFS WILL ADEQUATELY REPRESENT THE CLASS.

Rule 23(a)(4) requires that the representative parties will fairly and adequately protect the interests of the class.  The adequacy requirement requires a two-part showing: that 'class counsel is qualified, experienced, and generally able to conduct

12

the litigation' . . . . [and] that there is no conflict of interest between the named plaintiffs and other members of the plaintiff class." *Marisol A.*, 126 F.3d at 378 (citing *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d at 291). This means Plaintiffs cannot have antagonistic interests: "only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Ansoumana*, 201 F.R.D. at 87 (quoting *Martens v. Smith Barney*, 181 F.R.D. 243, 259 (S.D.N.Y. 1998)). Named Plaintiffs' interests here are in no way antagonistic to the other members of the proposed class; all class members would benefit from a judgment requiring Defendants to pay overtime and to pay class members for all hours worked. Plaintiffs have worked for Defendants for many years and are familiar with Defendants' practices. Furthermore, Plaintiffs have already been involved in this litigation for a period of approximately fifteen months and have shown a willingness and capability of representing the class.

As for class counsel, Samuel & Stein are experienced litigators with a breadth of experience with both civil and criminal litigation. Michael Samuel, Esq. has been admitted to the bar in New York for seventeen years, and David Stein, Esq., has been a practicing litigator for nineteen years, admitted in Pennsylvania, Illinois, New York, New Jersey, and Washington D.C. Both attorneys are experienced in wage-and-hour litigation

13

in both the federal and state courts, and are currently representing numerous plaintiffs in FLSA and New York Labor Law cases. Consequently, plaintiff and counsel will represent the interests of the class adequately and vigorously.

## b. PLAINTIFFS SATISFY ALL REQUIREMENTS OF RULE 23(b)(3).

Having satisfied the requirements of Rule 23(a), Plaintiffs must also satisfy one of the three prongs of Rule 23(b). Rule 23(b)(3) requires that common questions of law or fact not only be present, but "predominate over any questions affecting only individual members, and . . . class action is superior to other available methods for the fair and efficient adjudication of the controversy." Plaintiffs easily meet the various Rule 23(a) criteria, and this is perhaps the best indicator that Rule 23(b)(3) is satisfied. *See Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality"); *Martens*, 181 F.R.D. at 260.

### i. COMMON QUESTIONS OF LAW AND FACT PREDOMINATE.

The important inquiry here is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d at 139; *accord Bolanos*, 212 F.R.D. at 157. The Court must focus on *liability* and whether the liability

14

issue is common to the class. *See Bolanos*, 212 F.R.D. at 157- 58 (citing *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 114 F.R.D. 48, 52 (S.D.N.Y. 1987) (quoting *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 87 F.R.D. 87, 93 (S.D.N.Y. 1981)). Where "[p]laintiffs' claims are based on the alleged across-the-board deprivations of overtime wages" by defendant, the "predominance requirement is satisfied . . . ." *Bolanos*, 212 F.R.D. at 158. In the instant action, Plaintiffs satisfy the predominance requirement because the factual and legal issues as alleged in the complaint are the principal issues at the heart of this case. The Class claims arise from a common nucleus of facts, given that all Plaintiffs are employees whose employer has refused, as a matter of policy, to pay them overtime, and whose employer had a policy of requiring them to report for work without paying them for all hours worked.

The only remotely individualized determinations that can be identified are questions of damages - to what degree has each particular class member been harmed by these uniform policies. Damages, however, may be calculated later using a mechanical formula, and this does not implicate a predominance of individual issues. See *In re Monumental Life Ins.*, 365 F.3d 408, 419 (5th Cir. 2004) (there is no "sweat of the brow" exception to class certification based on the complexity determining individual damages); *Chavez v. IBP, Inc.*, No. CT-01-5093, 2002

15

WL 31662302, *4 (E.D. Wash. Oct. 28, 2002) (holding that individual questions of damages do not predominate because damages can be calculated using a formula).

## ii. A CLASS ACTION IS SUPERIOR TO ALTERNATIVES.

The second part of the 23(b)(3) analysis is a relative comparison examining whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968) (emphasis added). Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to judicial inquiry into the superiority of a class action, including: whether individual class members wish to bring, or have already brought, individual actions; the desirability of concentrating the litigation of the claims in the particular forum; and the difficulties of managing the case as a class action. FED. R. CIV. P. 23(b)(3). Denying class certification on manageability grounds is "disfavored" by the courts and "should be the exception rather than the rule." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d at 140 (internal quotations omitted). In similar cases, this District has found that "[t]he interests of justice will be well served by resolving the common disputes of potential class members in one forum." *Bolanos*, 212 F.R.D. at 158; *Ansoumana*, 201 F.R.D. at 89.

There is no question here that a class action is the

16

superior method for adjudication of the relevant claims in this case. The likelihood of up to 100 individual plaintiffs each bringing individual claims is low, and the burden on the courts of each individual doing so would be excessive. The class members face, as noted above, common questions of law and fact, and have no interest in separately litigating their entitlement to overtime, given that there is an overriding issue: whether plaintiffs are exempt from overtime laws based on their job duties. Numerous individual actions would waste judicial resources and create the danger of conflicting outcomes. Plus, the value of each individual claim, while not insignificant, would quickly be swallowed up by the costs of litigation. Class treatment is certainly superior to the only real alternative – a handful of Defendants' employees securing compensation for their injuries, and the rest continuing to suffer as a result of Defendants' policies.

## CONCLUSION

For all the reasons set forth above, Plaintiffs have made the requisite showing that Class and Collective Action certifications are appropriate under Rule 23 and 29 U.S.C. § 216(b), respectively. Thus, Plaintiffs respectfully request that this Court grant Plaintiffs' motion, certifying the collective action on Plaintiffs' FLSA claims and granting

17

Plaintiff the right to send an "opt-in" notice to all those in the relevant class, and certifying the class action on Plaintiffs' New York Labor Law claims.

Dated: June 26, 2009

Respectfully submitted,

David Stein (DS 2119)
Michael Samuel (MS 7997)
SAMUEL & STEIN
Attorneys for Plaintiffs
38 West 32nd Street
Suite 1210
New York, New York 10001
(212) 563-9884

18

# EXHIBIT 2



*Court date : 4/25/07*
*9:30 a.m.*
*Trenton, N.J.*
*( J. Davie )*

### State of New Jersey

DEPARTMENT OF LABOR AND WORKFORCE DEVELOPMENT
PO BOX 072
TRENTON, NEW JERSEY 08625-0072

April 04, 2007

TIME RECORD STORAGE COMPANY
225 Long Avenue
Hillside NJ 07205

Re: WC-349-0207-FAR
Carlos Ramirez
VS.
Time Moving and Storage

Dear Sir/Madam:

We have received a complaint from your former employee that wages are due, and we are enclosing a copy of this claim form for your information. The claimant has requested a proceeding, and therefore, we have scheduled this matter on the date shown in the enclosed Summons Complaint.

If these monies are due, please send this office two separate checks; one payable to the Commissioner of Labor and Workforce Development in the amount of an Administrative Fee of 10% / 18% / 25% of the claim ( as per the attached advisory notice) and $25.00 for the Summons Cost. The second check payable to your former employee should be in the amount of the claim (less tax deductions). If you dispute the claim, you must appear at the scheduled proceeding.

We are totally impartial in this matter and do not assist employees or employers at the proceeding.

If you fail to appear at the proceeding, an Award by Default may be given against you for failing to answer the Summons Complaint.

Thank you for your expected cooperation.

Very truly yours,

Howard M. Stein, Section Chief
Wage Collection Section
(609) 292-3658

*New Jersey Is An Equal Opportunity Employer * Printed on Recycled and Recyclable Paper*



*DIVISION OF WAGE AND HOUR COMPLIANCE*
*WAGE COLLECTION SECTION*
*(609) 292-3658 * FAX (609) 984-3005 * www.nj.gov/labor*

Case Number :WC-349-0207-FAR

To: JAY KEVIN GILGIA, PARTNER, and Individually, and
TIME RECORD STORAGE COMPANY
225 LONG AVENUE
HILLSIDE NJ 07208

YOU ARE HEREBY SUMMONED pursuant to Wage Collection Statue N.J.S.A. 34:11-57 et seq. and Wage Payment Law Statute N.J.S.A. 34:11-4.1 et seq to appear before the Wage Collection Section, Division of Wage and Hour Compliance, Department of Labor and Workforce Development , and to bring payroll records and cancelled checks pertaining to this claim.

REPORT TO               NEVIUS-VOORHEES BUILDING, 4th Floor
SECURITY DESK           135 East State Street
                        Trenton, New Jersey

On April 25, 2007 at 9:30 A.M. to answer in this action for wages due in the amount of $146.25 to plaintiff. Dated this March 30, 2007.

By: REFEREE - SYLVIA FARLEY

Carlos Ramirez
    vs.
JAY KEVIN GILGIA, PARTNER, and Individually, and
TIME RECORD STORAGE COMPANY
                        COMPLAINT

The plaintiff, Carlos Ramirez, demands of the defendant the sum of $146.25 dollars, wages for that:

1. The defendant agreed to and did employ and hire the plaintiff on or about February 14, 2006
2. There is due and owing the plaintiff from the defendant the sum of $146.25 dollars in wages as follows:

From 2/14/2006 TO 6/23/2006 WAGES, OVERTIME $146.25
which sum was demanded by the plaintiff of the defendant in the sum of $146.25 together with the cost of this suit.

                        By: Carlos Ramirez
                            Pro se
Demand          $146.25
Summons Cost    $25.00
Total           $171.25
=================================================================

I served the within summons                    , on the defendant, by reading it to
And giving     a copy therof. The said defendant,                          not being found, I served the
within summons                    , by leaving a copy thereof at      residence with a member of     family
above the age of fourteen years, informing
of its contents.
                Process Server    _____

64537b  5

AH

NEW JERSEY DEPARTMENT OF LABOR AND WORKFORCE DEVELOPMENT
DIVISION OF WAGE AND HOUR COMPLIANCE
PO BOX 389
TRENTON, NEW JERSEY 08625-0389

| PLEASE COMPLETE BOTH SIDES OF FORM: | CASE NUMBER: C1 # 234517 |
| --- | --- |

I request the Commissioner of Labor to investigate the claim indicated by the information supplied in this complaint form and advise me of the results of the investigation.

PLEASE TYPE OR PRINT LEGIBLY IN COMPLETING THIS FORM IN ITS ENTIRETY.

### ACCEPTANCE OF THIS CLAIM BY THE DEPARTMENT DOES NOT GUARANTEE COLLECTION

## EMPLOYMENT INFORMATION

| NAME (LAST) | (FIRST) | (INITIAL) | SOCIAL SECURITY NUMBER |
| --- | --- | --- | --- |
| Ramirez | Carlos | A. | |

NUMBER AND STREET ADDRESS — TELEPHONE NUMBER (Give Area Code)

| CITY | STATE | ZIP CODE | DAYTIME TELEPHONE NUMBER OR # WHERE MESSAGE CAN BE LEFT |
| --- | --- | --- | --- |
| Elizabeth | New Jersey | 07208 | |

NAME OF EMPLOYER:
Time Record Storage Co.

BUSINESS ADDRESS (NUMBER AND STREET)
225 Long Ave.  (Place of work)

| CITY | STATE | ZIP CODE | COUNTY | TELEPHONE NUMBER |
| --- | --- | --- | --- | --- |
| Hillside | New Jersey | 07208 | Union | 973-923-8228 |

EMPLOYER'S HOME ADDRESS (NUMBER AND STREET)
158 Pioneer Street (main office)

| CITY | STATE | ZIP CODE | COUNTY | TELEPHONE NUMBER |
| --- | --- | --- | --- | --- |
| Brooklyn | N.Y | 11231 | | 718-855-1700 |

NATURE OF EMPLOYER'S BUSINESS IS:
Record Storage and moving

NAME OF CORPORATE OFFICERS / OWNER(S):

Has the employer filed for bankruptcy?  ☐ Yes  ☒ No    If No, is the employer still in business?  ☒ Yes  ☐ No
If yes, have you submitted a Proof of Claim to the Bankruptcy Court?  ☐ Yes  ☐ No

| DATE STARTED TO WORK | DATE LAST WORKED | IF NO LONGER EMPLOYED, WRITE THE REASON |
| --- | --- | --- |
| 2-14-06 | 6-23-06 | I complaint about Overtime |

MY FINAL RATE OF PAY WAS: GROSS AMOUNT - PER HOUR: $ 10.00    PER DAY: $    PER WEEK: $ 400.00

| I WORKED IN - CITY: | COUNTY: | |
| --- | --- | --- |
| Hillside | Union | New Jersey |

THE KIND OF WORK I DID & TITLE:
Warehouse

MY USUAL PAY-DAY WAS: CIRCLE DAY:    MON.    TUE.    WED.    (THU.)    FRI.    SAT.    SUN

| THE LAST WAGE PAYMENT I RECEIVED WAS: GROSS AMOUNT: $ 120.00 | DATE RECEIVED: 6-29-06 |
| --- | --- |

THE PERIOD OF TIME COVERED BY SUCH LAST PAYMENT WAS:
1 1/2 days

THE TOTAL AMOUNT OF WAGES (BEFORE TAX DEDUCTIONS) WHICH I BELIEVE IS DUE ME IS: $ 146.25

THE PERIOD OF TIME FOR WHICH WAGES ARE DUE (LIST DATES AND HOURS):
5-17 # 1 hr., 5-18 # 15mins., 5-20 # 6 1/2 hrs. ,6-3 # 7 hrs.    5-6 # 5 hrs.  5-13 # 6 hrs.  5-16 # 1 hr.,
6-5 # 1/2 hr. , 6-7 # 1/2 hr., 6-12 # 1/2 hr. ,6-13 # 1/2 hr., 6-14 # 1/2 hr.

MW-31A (R-8-04)

I made demand for monies I believe due me at the following place and time (write in the space below, FULL INFORMATION, including the name of the person on whom demand was made and the reason given you for refusal to pay.)

Joe Mcarty (warehouse manager) that the company doesn't pay overtime, just straight time that decision came from the main office, and i found out that the company doesn't pay any body overtime it's nothing new for them to have issues about paying overtime, Oi was told if i didn't like leave. What made it worst is that we were forced to work on Saturday's !!! told on fridays at

WERE ANY WAGES DUE YOU PAID BY CHECKS RETURNED NOT HONORED? ☐ Yes ☒ No  IF YES, SUBMIT PHOTOCOPIES OF 3:0 CHECK(S) p:

| | |
|---|---|
| WERE YOU A MEMBER OF ANY UNION WHEN EMPLOYED IN THIS FIRM?<br>☐ Yes ☒ No | IF "YES", GIVE NAME, LOCAL NO., ADDRESS, ZIP CODE AND TELEPHONE NO. OF UNION |
| HAVE YOU ASKED YOUR UNION FOR ASSISTANCE?<br>☐ Yes ☒ No | IF "YES", WHAT ACTION HAS THE UNION TAKEN? |
| WERE YOU CLASSIFIED AS AN INDEPENDENT CONTRACTOR BY YOUR EMPLOYER?<br>☐ Yes ☒ No | IF "YES", HAVE YOU FILED A COURT ACTION? |

DO YOU CONSIDER YOURSELF TO HAVE BEEN AN EMPLOYEE AND NOT AN INDEPENDENT CONTRACTOR? ☐ Yes ☐ No

THE FOLLOWING SPACE IS RESERVED FOR ADDITIONAL INFORMATION. PLEASE PROVIDE DETAILS AND ATTACH COPIES OF RELATED PAPERWORK. (If possible, include photocopy of a paystub or W-2 Form)

I have send a copy of every pay stub from the day i started working, including seperated weekly pay stub w/t copy of timesheets for overtime owed.

When il got my answer about overtime, i told Joe Mcarty that if the company wasn't going to pay me for my Saturday's i wasn't coming in. So when i was told to come in on 6-10-06 i said no, again on 6-17-06. On 6-19-06 (monday) when il came in to work i got suspended for 1 day! and on 6-23-06 about 11:15 am Joe Mcarty told me he had to let me go, when il asked why, he said Attitude? → because my

IF UNDER 18, GIVE AGE _____ AND DATE OF BIRTH _____

NOTE: If you are under 18 years of age, it is necessary that this form be signed by one of your parents or guardian in addition to your own signature.

*I hereby authorize the New Jersey Department of Labor and Workforce Development, Division of Wage and Hour Compliance, to release my identity to the Employer during the course of an investigation of this wage claim.*

Date 10-21-06    *Your Signature* Carlos A. Ramos

Nury Ramirez    and    657 N. Broad St. #1H Eliz. N.J 07208
WITNESS TO SIGNATURE    ADDRESS OF WITNESS

WAGE CLAIM PROCEEDING
DEPARTMENT OF LABOR AND WORKFORCE DEVELOPMENT
DIVISION OF WAGE AND HOUR COMPLIANCE
WAGE COLLECTION SECTION

CASE# **WC-349-0207-FAR**

IN THE MATTER OF:

Carlos Ramirez

Plaintiff

V.

Time Moving and Storage

Defendant

DECISION

NO CAUSE

Wage Claim Proceeding under N.J.S.A 34:11-57

Appeal under N.J.S.A. 34:11-63

SYLVIA PARLEY                                September 17, 2009
-----------------------------------          ---------------------------
REFEREE                                      DATE