**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Marcel Alleyne and Earl Legrande, Individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>- vs. -<br><br>Time Moving & Storage Inc., and The Time Record Storage Company, LLC<br><br>    Defendants. | CASE NO. 08-CV-1356<br><br><br>**SUPPLEMENTAL SUBMISSION REGARDING FAIRNESS OF CLASS ACTION SETTLEMENT** |

**SUPPLEMENTAL SUBMISSION REGARDING FAIRNESS OF CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT............................................1

LEGAL ARGUMENT...................................................3

    I.   OBJECTORS ARE MEMBERS OF THE PROPOSED CLASS .............3

    II.  THE PROPOSED SETTLEMENT CLASS DOES NOT MEET THE
        STANDARDS FOR A CLASS ACTION UNDER FED. R. CIV. P. 23 ...3

    III. SUBCLASSES ARE REQUIRED BECAUSE THE PROPOSED
        SETTLEMENT MAKES CRITICAL ALLOCATION DISTINCTIONS
        BETWEEN CLASS MEMBERS ...................................7

    IV.  THE SETTLING PARTIES HAVE FAILED TO CARRY THEIR
        BURDEN TO SHOW THAT THE SETTLEMENT IS FAIR .............11

        A. THE PROCEDURAL HISTORY OF THE CASE SUGGESTS
           THAT CONCERN IS WARRANTED...........................12

        B. THE SETTLEMENT SHOULD NOT BE APPROVED BECAUSE OF
           ITS FUNDAMENTAL LACK OF FAIRNESS....................16

    V.   THE PROPOSED ATTORNEYS' FEE AWARD IS EXCESSIVE
        RELATIVE TO THE SIZE OF THE RECOVERY ...................19

    VI.  OBJECTORS SHOULD BE PERMITTED TO INTERVENE .............21

        A. OBJECTORS ARE ENTITLED TO INTERVENE AS OF RIGHT
           UNDER FED. R. CIV. P. 24(a).........................21

        B. ALTERNATIVELY, OBJECTOR SHOULD BE PERMITTD TO
           INTERVENE UNDER FED. R. CIV. P. 24(b)...............24

CONCLUSION......................................................24

i

## TABLE OF AUTHORITIES

<u>Cases</u>                                                                  <u>Page</u>

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997).....8,9,10,12

*Estrella v. P.R. Painting Corp.*,
    596 F.Supp.2d 723 (E.D.N.Y. 2009)..........................16

*Grant v. Bethlehem Steel Corp.*, 823 F.2d 20 (2d Cir. 1987).....11

*In re Benny,* 791 F.2d 712, 721 n. 12 (9th Cir. 1986)...........23

*In re Relafen Antitrust Litig*., 231 F.R.D. 52 (D. Mass. 2005)..10

*Khan v. IBI Armored Services, Inc.*,
    474 F.Supp.2d 448 (S.D.N.Y. 2007).........................4

*Mirfasihi v. Fleet Mortgage Corp.*,
    356 F.3d 781 (7th Cir. 2004)..............................12

*Molski v. Gleich*, 318 F.3d 937, 953  (9th Cir. 2003)...........12

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 857 (1999).............8

*Smith v. Sprint Comms. Co.*, 387 F.3d 612 (7th Cir. 2004) ...7,9,10

*Tlacoapa v. Carregal*, 386 F.Supp.2d 362 (S.D.N.Y. 2005)........16

*Trbovich v. United Mine Workers of Am.,* 404 U.S. 528 (1972)....22

*Troutt v. Stavola Bros., Inc.*, 107 F.3d 1104 (4th Cir. 1997)....5

*Walker v. City of Mesquite,* 858 F.2d 1071 (5th Cir. 1988)......22

<u>Statues and Rules</u>

29 U.S.C. § 216(b)...............................................1

29 C.F.R. § 782.2(b)(2)..........................................6

Fed. R. Civ. P. 23...............................................1

Fed. R. Civ. P. 12(c)............................................9

Fed. R. Civ. P. 24(a)...........................................21

Fed. R. Civ. P. 24(a)...........................................23

## **PRELIMINARY STATEMENT**

On September 23, 2009, a fairness hearing was held before the Court on the proposed class action settlement. At the conclusion of the hearing, the Court requested that the parties and objectors advise the Court whether a follow-up hearing before the Court would be necessary. Objectors are prepared to appear at such a hearing, should the Court find that it would be helpful, but do not otherwise request such a conference.

In addition, the Court invited the parties and objectors to file supplemental submissions if appropriate. Objectors do not wish to rehash all the points already raised by the pleadings and at the fairness hearing, but submit these papers in order to clarify a few points of confusion.

## **SUBCLASSES**

Putative class counsel argued that he did not "rob Peter to pay Paul" – that he did not trade off one sub-class's recovery against another's – because the percentages for each class were set before the size of the pool was finalized. The Court, with respect, should question the credibility of this claim, given that defendants wrote to Magistrate Judge Gold on behalf of all parties on May 30, 2008, to

> "report that the parties have reached a tentative settlement. The parties have agreed upon a gross settlement sum that will resolve all claims in both of these cases. The parties continue to negotiate remaining

> open items, including payment terms, and a fair and equitable distribution among the class members."

In other words, in May of 2008, the parties were claiming that they had selected the gross settlement fund first, and were then negotiating the distribution among class members afterwards, contradicting the putative class counsel's claims at the fairness hearing. This discrepancy is extremely significant.

## DEFINITION OF THE SOUTHERN DISTRICT CLASS

At the hearing, the Court asked counsel for the objectors for the class definition which was proposed in the parallel Southern District case pending before Judge McMahon. The definition in the amended complaint in that case was:

> 29. Plaintiffs bring their New York Labor Law claims on behalf of all persons who were employed by defendants at any time since March 12, 2002, to the entry of judgment in this case (the "Class Period"), who were non-exempt employees within the meaning of the New York Labor Law, whose jobs were not covered by the motor vehicle exception because they did not load or drive trucks, and who have not been paid overtime wages in violation of the New York Labor Law (the "Class").

A following allegation in the amended complaint clarified that the proposed class referred to individuals with specific duties:

> 53. Upon information and belief, these other employees also helped pack offices but did not themselves load items into trucks.

In the motion for class certification filed in the Southern District action, the class was defined as:

> All persons employed by defendants as "supervisors" or

2

>"helpers," who did not load trucks, who were not paid the statutory overtime premium for hours worked in excess of forty hours in a workweek, or who were not paid for all hours worked in a day, at any time between March 17, 2002 and the date of final judgment in this matter (the "class period.")

There was some confusion at the hearing as to the identity of the "supervisors" in this definition. It refers only to supervisors who worked "in the field" as part of the moving process, *not* individuals who worked at the defendants' warehouse who may have been referred to by defendants as "supervisors." At no time did the plaintiffs in the Southern District action seek to represent any warehouse employees.

## MOTOR CARRIER EXEMPTION

At the hearing, counsel for the putative class suggested that even if the objectors did not load trucks, they would be exempt under the Motor Carrier Act as "driver's helpers." This statement was incorrect. It is true that the Motor Carrier Act and its implementing regulations define a class of exempt employees known as "driver's helpers." This class, however, is not equivalent to the sub-class of employees that objectors represent. The "driver's helper" is defined as:

> A Driver's "helper," as defined for Motor Carrier Act jurisdiction (Ex Parte Nos. MC-2 and MC-3, 28 M.C.C. 125, 135, 136, 138, 139), **is an employee other than a driver, who is required to ride on a motor vehicle when it is being operated in interstate or foreign commerce within the meaning of the Motor Carrier Act**. (The term does not include employees who ride on the vehicle and act as assistants or relief drivers. Ex

3

> parte Nos. MC-2 and MC-3, supra. See §782.3.) This definition has classified all such employees, including armed guards on armored trucks and conductorettes on buses, as "helpers" with respect to whom he has power to establish qualifications and maximum hours of service because of their engagement in some or all of the following activities which, in his opinion, directly affect the safety of operation of such motor vehicles in interstate or foreign commerce (Ex parte Nos. MC-2 and MC-3, 28 M.C.C. 125, 135-136): Assist in loading the vehicles (they may also assist in unloading (Ex parte Nos. MC-2 and MC-3, supra), an activity which has been held not to affect "safety of operation," see §782.5(c); as to what it meant by "loading" which directly affects "safety of operation," see §782.5(a)); dismount when the vehicle approaches a railroad crossing and flag the driver across the tracks, and perform a similar duty when the vehicle is being turned around on a busy highway or when it is entering or emerging from a driveway; in case of a breakdown: (1) Place the flags, flares, and fuses as required by the safety regulations. (2) go for assistance while the driver protects the vehicle on the highway, or vice versa, or (3) assist the driver in changing tires or making minor repairs; and assist in putting on or removing chains.

29 C.F.R. § 782.4(a) (Emphasis added.) Importantly, the regulations go on to clarify that the exemption is narrowly construed to apply only to those who jobs affect safety and who are required to ride on the vehicles, not everyone who happens to ride on the motor vehicles:

> **The exemption has been held inapplicable to so-called helpers who ride on motor vehicles but do not engage in any of the activities of "helpers" which have been found to affect directly the safety of operation of such vehicles in interstate or foreign commerce.** (Walling v. Gordon's Transports (W.D. Tenn.) 10 Labor Cases par. 62,934, 6 W.H. Cases 831, affirmed 162 F. (2d) 203 (C.A. 6), certiorari denied, 332 U.S. 774 **(helpers on city "pickup and delivery trucks" where it was not shown that the loading in any manner affected**

4

> **safety of operation and the helper's activities were "in no manner similar" to those of a driver's helper in over-the-road operation).) It should be noted also that an employee, to be exempted as a driver's "helper" under the Secretary's definitions, must be "required" as part of his job to ride on a motor vehicle when it is being operated in interstate or foreign commerce; an employee of a motor carrier is not exempted as a "helper" when he rides on such a vehicle, not as a matter of fixed duty, but merely as a convenient means of getting himself to, from, or between places where he performs his assigned work.** (See Pyramid Motor Freight Corp. v. Ispass, 330 U.S. 695, modifying, on other grounds, 152 F. (2d) 619 (C.A. 2).)

29 C.F.R. § 782.4(c) (Emphasis added.) As previously submitted by the objectors, their job duties were to pack up the customers' offices, not to load the vehicles or assist the drivers in safety matters.

## ATTORNEYS FEES

Objectors argued that the class counsel's recovery, although theoretically only one-third of the total settlement, was actually likely to represent a much greater share, given the significant number of class members – almost 40% of the total class, at the time of putative class counsel's last submissions to the Court – who would not be receiving monies, either because they did not get notice or opted out. Their monies would revert to defendants, making the total recovery significantly less than $180,000, but putative class counsel's fees would remain a fixed $60,000.

Putative class counsel cited *Masters v. Wilhelmina Model*

5

*Agency, Inc.*, 473 F.3d 423, for the proposition that the attorneys fees should be calculated on the whole fund rather than based on the claims made against the fund. That case is entirely inapposite here, however. In *Masters*, the excess funds were – if they existed at all, which the Second Circuit noted might not be the case, making the issue moot – to be distributed under the Cy Pres doctrine. In *this* case, under the terms of the proposed settlement, the excess funds would simply revert back to Time Movers. Moreover, this case does not present a situation in which a Fund has been created and it is unknown at the time of settlement whether claims might be made against the Fund; rather, because the "excess" funds belong to putative class members whose addresses were unknown and who never even received class notice, it is possible to know now – even before settlement – that these putative class members will not recover anything.

Further, the Second Circuit noted in *Masters* that the Court could police the fee award for reasonableness, noting, "Use of the entire Fund as a basis for the computation does not necessarily result in a "windfall" because the court may always adjust the percentage awarded in order to come up with a fee it deems reasonable in light of the *Goldberger* factors." *Masters*, 473 F.3d at 437. This Court should ensure that putative class counsel does not receive a windfall, particularly given the

6

limited results presented here.

## CONCLUSION

For all the reasons set forth above, in Objectors' previous papers, and at the fairness hearing, Objectors respectfully submit that this Court should not grant final approval of the proposed settlement, should decertify the class, should grant Objectors' motion to intervene, should insist upon subclasses if this action is to proceed as a class action, and should grant Objectors access to the discovery produced in this matter so that Objectors can better assess the fairness of the proposed settlement.

Dated: October 22, 2009

                                        Respectfully submitted,

                                        _____
                                        David Stein (DS 2119)
                                        Michael Samuel (MS 7997)
                                        SAMUEL & STEIN
                                        Attorneys for Objectors
                                        38 West 32nd Street
                                        Suite 1210
                                        New York, New York 10001
                                        (212) 563-9884